```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
```

STAR SCIENTIFIC, INC.              *

       Plaintiff                 *

       vs.                       *   CIVIL ACTION NO. MJG-01-1504
                                          (Consolidated with MJG-02-2504)
R.J. REYNOLDS TOBACCO COMPANY,     *
et al.
       Defendants                *

\*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM AND ORDER RE: PLAINTIFF'S POST-TRIAL MOTIONS

The Court has before it Plaintiff Star Scientific's Renewed Motion for Judgment as a Matter of Law and, in the Alternative, for a New Trial [Document 1095], Star Scientific's Request for Expedited Resolution of its Motion for Judgment as a Matter of Law [Document 1145] and the materials submitted relating thereto. The Court finds that a hearing is unnecessary.

### I.   BACKGROUND

In this action, Plaintiff, Star Scientific, Inc. ("Star"), the exclusive licensee of United States Patent Nos. 6,202,649 ("the '649 patent") and 6,425,401 ("the 401 patent") (collectively, "the Patents-in-Suit") sued Defendants R.J. Reynolds Tobacco Company, a North Carolina corporation, and R.J. Reynolds Tobacco Company, a New Jersey corporation (collectively, "RJR") for infringement of certain claims of the Patents-in-Suit

that relate to tobacco curing methods.

Star contended that there was direct infringement by farmers who, under contracts with RJR, cured tobacco in the 2001 and 2002 curing seasons. Star did not sue the farmers but, instead, sought to hold RJR liable for the farmers' alleged infringement.

The case was presented to a jury. The jury, after a twenty-day trial, deliberated for less than six and a half hours before returning a verdict finding that the Patents-in-Suit were not infringed and were invalid.

Specifically, the jury returned a Special Verdict finding that:

1.  Star did not prove by a preponderance of the evidence that any of the farmers infringed during the 2001 or 2002 curing seasons.

2.  RJR did prove invalidity by clear and convincing evidence on each of the grounds of:

    a.  Anticipation

    b.  Obviousness

    c.  Failure to disclose the best mode

    d.  Indefiniteness

The Court has before it Star's Motion Seeking Judgment as a Matter of Law or, in the Alternative, New Trial. The Court also notes that Star "requests that the Court expedite its resolution of Star Scientific's pending Motion for Judgment as a Matter of Law and allow the case to continue on its course through the

2

appellate system."  (Document 1145 at 5.)

## II. LEGAL STANDARDS

### A. Judgment as a Matter of Law

Pursuant to FED. R. CIV. P. 50, a court may render judgment as a matter of law after the moving party is fully heard on an issue at trial if there is no legally sufficient evidentiary basis for a reasonable jury to find for the party opposing the motion on that issue.  For a party to prevail on its renewed motion for judgment as a matter of law following a jury trial, the party "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings."  Pannu v. Iolab Corp., 155 F.3d 1344, 1348 (Fed. Cir. 1998).

### B. Motion for a New Trial

Pursuant to Fed. R. Civ. P. 59(a), a district court may grant a motion for a new trial "for any of the reasons for which new trials has heretofore been granted in actions of law" in federal court.  A district court should deny a motion for new trial unless the verdict: (1) is against the clear weight of the evidence; (2) is based upon evidence which is false; or (3) will result in a miscarriage of justice.  Burkley v. Mukasey, 538 F.3d

3

317, 321 (4th Cir. 2008); Poynter v. Ratcliff, 874 F.2d 219, 223 (4th Cir. 1989).  The decision to grant or deny a new trial is within the sound discretion of the trial court.  See Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980).

III. DISCUSSION

RJR filed an opposition to Star's motion refuting Star's version of the case and its contention that the jury's findings with regard to infringement and invalidity should be overturned.  Star did not reply to RJR's opposition, did not request a hearing and seeks an expedited decision so that it can proceed with its appeal.

In view of the absence of a reply, the absence of a hearing and Star's urgent request that the Court not take the time that would be necessary to provide a thorough opinion, the Court will be brief and summarily address only a few points.

A.   Non-Infringement by Farmers

Star did not prove, and RJR did not admit, that any of the farmers infringed the Patents-in-Suit. There was ample evidence from which the jury could find that the farmers used curing methods that did not infringe.  There was proof that farmers used what was referred to as the Peele method, and that the method that was used did not infringe.

4

Moreover, the essential ingredient for establishing Star's infringement case was acceptance by the jury of the opinion of Dr. Lee. However, the jury, as it most certainly should have, rejected Dr. Lee's opinion altogether. Indeed, if the matter were not moot by virtue of the verdict, the Court would now exclude Dr. Lee's testimony as not meeting the Daubert[1] standard and grant judgment as a matter of law establishing non-infringement.

B.   Indirect Infringement - 35 U.S.C. § 271(g)

The jury properly found that there was no direct infringement by any of the farmers at issue. Accordingly, the § 271(g) issue was rendered moot. Nevertheless, there was evidence adequately supporting the jury's finding that Star had not carried its burden under § 271(g).

C.   Evidentiary Rulings

The Court finds no reason to change or doubt the evidentiary rulings made during the course of trial. For example, the Court has no doubt that Star's attempt to call Mr. Borschke was properly denied. Even if there had been any relevance, the evidence was manifestly excludable pursuant to Rule 403 of the Federal Rules of Evidence.

---

[1]   Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

D.  **The Excused Juror**

At the beginning, the first phase trial was anticipated to be lengthy and appeared to present the possibility of a second phase trial (including damages and willfulness issues), preferably to be presented to as many of the same jurors as would be available for a second phase trial.  It was preferable to have the maximum of twelve jurors deliberate and return the first phase verdict so as to maximize the number that would be available if there were a loss of some jurors between the verdict in the first phase and the start of the second phase trial.  Therefore, the Court, without objection, selected twelve jurors and two alternates for the first phase trial.

On the ninth day of trial, a juror had an accident, was excused and was replaced.  There was no objection at trial to excusing the juror or to replacing her with the first alternate.  Star now contends that it was error to have selected alternates and to have replaced excused jurors with alternates.

On the twentieth day of trial, immediately prior to deliberations, the courtroom deputy clerk advised the Court that a juror – not identified – wished to be excused from deliberating due to a scheduling problem.  The Court – without knowing which juror had the problem – made the decision to grant the request.  The Court did not delay the proceedings to conduct a hearing on the matter.  However, the Court states with complete certainty

6

that even if there had been a hearing with regard to the request for excuse by the juror, the Court would have taken the same action. By no means would it have been a sound exercise of discretion to force the juror to deliberate and take the risk that she would be working under pressures and distractions that would have affected her ability thoroughly to deliberate.

Indeed, had the Court insisted on forcing this juror to deliberate, Star would, without doubt, now be complaining that the brief deliberation time was due to the juror's impatience rather than the lack of merit of Star's case.

Finally, Star's contention that the excused juror was favorable to them, and the replacement was not, is no more than baseless speculation. The undeniable fact is there were eleven other jurors (in addition to the replacement juror) who most definitely had a strong negative view of Star's case. The jury, even without the presence of the excused juror who might well have had an incentive to shorten deliberations, needed little time – less than six and a half hours after some four weeks of trial – to deliberate and reach a unanimous verdict for RJR and against Star.

E.   Invalidity

It suffices, in view of Star's request for expedited resolution, to state simply that the jury had ample evidence on

7

which to find that RJR had proven, by clear and convincing evidence, that the Patents-in-Suit were invalid.

IV. CONCLUSION

For the foregoing reasons:

1. Star Scientific's Request for Expedited Resolution of its Motion for Judgment as a Matter of Law [Document 1145] is GRANTED.

2. Plaintiff Star Scientific's Renewed Motion for Judgment as a Matter of Law and, in the Alternative, for a New Trial [Document 1095] is DENIED.

3. Judgment shall be entered by separate Order.

SO ORDERED, this Monday, December 21, 2009.

/s/
Marvin J. Garbis
United States District Judge